## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

WARRENDER ENTERPRISE, INC. D/B/A
LIFTED LIQUIDS, a Wisconsin corporation,

      Plaintiff,

v.

MERKABAH LABS, LLC, a Colorado limited
liability company; MERKABAH TECHNOLOGIES,
LLC, a Colorado limited liability company; Ryan
Puddy, an individual; and Ralph L. Taylor III, an
individual,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      Plaintiff, Warrender Enterprise, Inc. d/b/a Lifted Liquids ("Lifted Liquids"), by its counsel

Fox Rothschild LLP, for its Complaint and Jury Demand against Defendants Merkabah Labs,

LLC, Merkabah Technologies, LLC, Ryan Puddy, and Ralph L. Taylor III (collectively

"Defendants"), alleges as follows:

### Nature of Action

      1.    This action arises from Defendants' well-orchestrated and deliberate

misappropriation of Lifted Liquids' confidential business, proprietary, and trade secret

information, and their breach of contract and breach of fiduciary duties. Defendants wrongfully

acquired, disclosed, and used Lifted Liquids' information through unauthorized access to Lifted

Liquids' internal email communications and other improper means in violation of federal, state,

and common law.

2.      Defendants consciously conspired and deliberately pursued a fraudulent and malicious scheme to pick apart Lifted Liquids' business from within and steal Lifted Liquids' confidential business, proprietary, and trade secret information to further their own economic or corporate interests, to the detriment of Lifted Liquids. Defendants knowingly benefitted from their colluded misappropriation of Lifted Liquids' confidential business, proprietary, and trade secret information, and unfair competition enabling Defendants to quickly create a competing company using Lifted Liquids' resources and personnel and reap the associated awards in the marketplace without contributing or expending any of their own time, money, resources, knowledge or experience.

3.      Lifted Liquids brings this action to recover all damages recoverable by law, including treble, exemplary, and punitive damages, costs, attorneys' fees, as well as injunctive relief, arising from Defendants' unlawful conduct as detailed herein.

**Parties**

4.      At all relevant times, Plaintiff Lifted Liquids was and is a corporation organized and existing under the laws of the State of Wisconsin, with its principal office located in Bristol, Wisconsin. Currently, Lifted Liquids' principal office is located in Zion, Illinois.

5.      At all relevant times, Defendant Merkabah Labs, LLC ("Merkabah Labs") was and is a limited liability company organized and existing under the laws of the State of Colorado as of February 27, 2017, with its principal office located at 2400 Industrial Lane, Broomfield, Colorado 80020.

6.      At all relevant times, Defendant Merkabah Technologies, LLC ("Merkabah

Technologies") was and is a limited liability company organized and existing under the laws of the State of Colorado as of November 14, 2019, with its principal office located at 1900 Wazee Street, Suite 300, Denver, Colorado 80202.

7.      At all relevant times, Defendant Ryan Puddy ("Puddy") is an individual who, upon information and belief, was and is a resident of the State of Colorado. Puddy is the registered agent of Merkabah Labs. He is also Merkabah Labs' Chief Executive Officer and Chairman and Merkabah Technologies' Chief Executive Officer and Managing Partner. Upon further information and belief, Puddy was and is a co-owner, co-member, co-manager, officer, or director of Merkabah Labs and Merkabah Technologies.

8.      At all relevant times, Defendant Ralph L. Taylor III ("Taylor") is an individual who, upon information and belief, was and is a resident of the State of California. Upon further information and belief, Taylor was and/or is a co-owner, co-member, co-manager, officer, director, or employee of Merkabah Labs and/or Merkabah Technologies.

## Jurisdiction and Venue

9.      This Court has original jurisdiction pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836.

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

11.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) as there is diversity of citizenship between Lifted Liquids and all Defendants and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

12.     This Court has supplemental or pendent jurisdiction over Lifted Liquids' state law claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332. Each of Lifted Liquids' state law claims

arises out of the same factual nucleus as Lifted Liquids' federal claims.

13.     This Court has personal jurisdiction over the Defendants by virtue of their principal place of business or residence and because the wrongful conduct in which they engaged in the State of Colorado caused harm to Lifted Liquids in this State.

14.     This Court has personal jurisdiction over Merkabah Labs and Merkabah Technologies as they are Colorado limited liability companies and because their principal offices are located in Colorado.

15.     This Court has personal jurisdiction over Puddy as a resident of Colorado.

16.     This Court also has personal jurisdiction over Taylor as a nonresident of Colorado; Taylor is subject to the jurisdiction of this Court because Taylor availed himself of the laws of, and directed activities at, the State of Colorado. In addition, Taylor is subject to the jurisdiction of this Court pursuant to Colorado's Long-Arm Statute, C.R.S. § 13-1-124, as he engaged in the commission of a tort in the State of Colorado with Merkabah Labs and/or Merkabah Technologies, or in connection with his activities as a co-owner, co-member, co-manager, officer, director, or employee of Merkabah Labs and/or Merkabah Technologies, as more fully set forth herein.

17.     Upon information and belief, Defendants, and each of them, were the agents of each other, and that the acts of Defendants, or any of them, were ratified by and are attributable to each of them.

18.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because Merkabah Labs and Merkabah Technologies have their principal offices in this district, Puddy is a resident of this district, and a substantial part of the events giving rise to the claims occurred within this district.

**General Allegations**

**A.     General Business Background**

19.     Lifted Liquids produces its own lines of hemp-derived cannabidiol ("CBD")-infused products, CBD devices, research and development of CBD and products for private label clients.

20.     Lifted Liquids serves the industry by providing superior, consumer-centered and cost-effective CBD products and hemp raw goods that are lab tested with quality assurance, consistency, and traceability and creates the benchmark for quality and assurance in the industry.

21.     Lifted Liquids has a unique raw goods/CBD supply chain that many customers benefit from including without limitation: CBD and cannabigerol ("CBG") isolate, full spectrum and broad spectrum water soluble and distillate.

22.     Lifted Liquids spent substantial amounts of money, time, effort, labor, and skill to stabilize the supply chain in this new niche industry and to create traceable supply chains with credible documentation.

23.     To create traceable supply chains that its customers and the public has come to trust, Lifted Liquids performed years of due diligence, investing hundreds of thousands of dollars and expending thousands of hours of manpower, labor, skill, and effort to track down reliable sources. It conducted ongoing facility, testing lab, and other site visits, ensured that its supply of raw products and goods were and are properly screened, tested and vetted by a dependable approval process, and its testing results were and are consistent and verified by certificates of analysis ("COA") to provide its customers with trustworthy products and goods.

24.     To acquire the information to duplicate and re-create Lifted Liquids' supply chains

would be very difficult, timely, and costly.

25.     Upon information and belief, one of Lifted Liquids' largest customers vetted 50 to 60 or more companies before finding Lifted Liquids as its bulk supplier of water-soluble CBD due to the amount of fraudulent and unreliable products on the market.

**B.      Lifted Liquids' Confidential Business, Proprietary, and Trade Secret Information**

26.     Lifted Liquids is the owner of certain trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §1832 *et seq*., and the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-102.

27.     Lifted Liquids has devoted significant resources to its due diligence to build trustworthy and valuable supply chains. Lifted Liquids' confidential business, proprietary, and trade secret information includes the methods, processes, strategies, and resources used to develop and create its traceable supply chains and other commercially valuable information (collectively, "Protected Information")—essentially its plan for business.

28.     Lifted Liquids' Protected Information is derived from trade secrets, confidential business and proprietary information, including but not limited to research and development efforts, use of different equipment, product testing and verification, computations of various formulas, ingredients, temperatures, patterns, designs, procedures, business, marketing and analytical strategies, industry and market valuation and demand, pricing lists and strategies, delivery strategies, customer lists, compilations of personal and financial information of Lifted Liquids' actual and prospective customers collected from diverse sources, customer demands and preferences relating to pricing, costs, historical business dealings, invoices, purchasing history and orders, which together, results in a confidential unified process, design, and operation that were

and are not publicly known to others outside of Lifted Liquids, all of which are of value to Lifted Liquids.

29.     Lifted Liquids' financial information and customer lists are among its most sensitive Protected Information.

30.     The Protected Information, compiled over several years at substantial expense, constitute Lifted Liquids' trade secrets and confidential and proprietary information.

31.     Lifted Liquids has relationships with a number of customers that purchase goods and products from Lifted Liquids. Through its extensive internal research and development efforts, Lifted Liquids has developed these relationships over many years, and with substantial expenditure of time and resources.

32.     Lifted Liquids has always been and is very cognizant of its highly confidential business, proprietary, and trade secret information and took proactive steps to protect such information from becoming known to its competitors and to the public in general, and to protect its competitive advantage.

33.     Lifted Liquids' Protected Information is valuable to Lifted Liquids precisely because it is secret. Lifted Liquids' Protected Information is not publicly available or readily ascertainable, and derives economic and commercial value from not being generally known to or readily available to persons outside of Lifted Liquids or to others who can obtain economic value from its disclosure or use.

34.     Competitors, like Merkabah Labs and Merkabah Technologies, armed with this information can target Lifted Liquids' most valuable and valued customers, without expending any resources of their own.

35.     The Protected Information would be very difficult, time-consuming, and expensive for competitors to acquire and duplicate.

36.     Lifted Liquids has made reasonable efforts to preserve the secrecy of its Protected Information.

37.     Access to Lifted Liquids' Protected Information is restricted to persons on a need-to-know basis.

38.     To safeguard the Protected Information, Lifted Liquids employs significant security measures, including but not limited to password-protected email accounts, password-protected and access-restricted cloud server, implementing security software to receive alerts for suspicious or fraudulent activity such as when an unauthorized computer is used to access or log into email accounts or the cloud server.

39.     Lifted Liquids also has restricted access to its cloud server, which contains its Protected Information, to only two internal employees, Lifted Liquids' Chief Executive Officer/President and Chief Operations Officer. These two employees are the only two employees with access to its cloud server and its internal accounting software. No other employees or persons have access unless authorized by Lifted Liquids on a need-to-know basis.

40.     In addition to these security measures, Lifted Liquids enters into confidentiality agreements to maintain the secrecy of its Protected Information.

41.     Access to Lifted Liquids' Protected Information would give any of its competitors who acquired such information an unfair competitive advantage. At a minimum, a competitor would be able to use Lifted Liquids' Protected Information to compete unfairly by undercutting Lifted Liquids' pricing, and using its customer lists, product and service offerings to current and

prospective customers.

42.     Lifted Liquids' Protected Information qualifies as trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., and the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq.*

**C.     Non-Disclosure Agreement with Defendant Taylor**

43.     In or around March of 2019, Lifted Liquids and Taylor agreed that Taylor would work for Lifted Liquids as a paid, independent sales representative for Lifted Liquids.

44.     Through Taylor's previous relationship with Lifted Liquids, Taylor was and is in possession of Lifted Liquids' Protected Information, and such information was made available to him under circumstances requiring that he maintain the secrecy of Lifted Liquids' Protected Information and trade secrets.

45.     Taylor was given a Lifted Liquids email address, ralphtayor@liftedliquids.com, to allow him to conduct his job duties and responsibilities as its sales representative. Taylor understood that he was to conduct business on behalf of Lifted Liquids and for Lifted Liquids' benefit.

46.     By accepting and using his Lifted Liquids email account to conduct business on Lifted Liquids' behalf, Taylor manifested his intent to assume the role as an independent sales representative on behalf of and for the sole benefit of Lifted Liquids.

47.     Taylor's responsibilities with Lifted Liquids ranged from procuring sales, filling customer orders, communicating with customers, and maintaining contact with Lifted Liquids' actual and prospective customers, among other duties—all to be conducted for and on behalf of Lifted Liquids and for Lifted Liquids' sole benefit.

48.     Taylor was sent Lifted Liquids' Protected Information through confidential internal email communications on a need-to-know basis only when necessary to act and conduct business on Liquid Liquids' behalf. These internal email communications included Protected Information in the body of the email or attached as a document that was itself Protected Information or contained Protected Information. The Protected Information was not disclosed to others outside of Lifted Liquids, and Taylor was not authorized to disclose any internal email communications containing Protected Information outside Lifted Liquids.

49.     To safeguard its Protected Information, Lifted Liquids and Taylor entered into a Non-Disclosure Agreement ("NDA").

50.     By his signature to the NDA, Taylor acknowledged and agreed that he would not "use for [his] own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of [Lifted Liquids]" any "information or material that has or could have commercial value or other utility in the business in which [Lifted Liquids] is engaged."

51.     Taylor had an express duty to hold and maintain the Protected Information "in strictest confidence in sole and exclusive benefit of [Lifted Liquids]."

52.     Taylor knew that the information underlying Lifted Liquids' Protected Information included trade secrets. Taylor was also aware that Lifted Liquids' Protected Information would be valuable to any competitor of Lifted Liquids and that he had a duty to maintain the secrecy of the Protected Information.

53.     The NDA was important to Lifted Liquids in safeguarding its Protected Information from competitors and others who would misuse it for their own personal or economic gain.

54.     Taylor further agreed that the terms of the NDA survived its termination.

55.     While Taylor was working as an independent sales representative for Lifted Liquids, and conducting business on Lifted Liquids' behalf, he held himself out as Lifted Liquids' Chief Procurement Officer ("CPO").

**D.     Contractual Relationship with Defendant Merkabah Labs**

56.     Merkabah Labs offers certain processing services for CBD distillate and CBD isolate. Merkabah Labs processes CBD distillate and formulates or creates full spectrum nano water soluble CBD ("Merkabah Product").

57.     Merkabah Labs and Lifted Liquids entered into a contract in which Merkabah Labs agreed that it would produce and test the Merkabah Product according to Lifted Liquids' required specifications, and in exchange, Lifted Liquids would be the "exclusive supplier" for the Merkabah Product.

58.     Puddy, as Chief Executive Officer of Merkabah Labs, signed the contract with Lifted Liquids as one of Merkabah Labs' "duly authorized officers."

59.     Merkabah Labs further agreed that Merkabah Labs would "Private Label/White Label" all nano products and other CBD products Lifted Liquids creates.

60.     As part of the contract, Merkabah Labs, through Puddy, also agreed to substantial confidentiality provisions.

61.     Merkabah Labs' confidentiality obligations prohibited disclosure and use of Lifted Liquids' Protected Information. Merkabah Labs was under a duty not to disclose or use any "knowledge, know-how, inventions, trade secrets, specifications, samples, designs, formulas, data or results, manufacturing procedures, raw materials, sourcing and pricing, marketing and business

plans, product sales information, strategies, forecasts, research and development plans, product ideas, the identity, purchasing habits and contact information of [Lifted Liquids'] current or potential customers," relating to Lifted Liquids' "business, finances, products, intellectual property or other proprietary rights, including trade secrets, regardless of form (whether written, oral, tangible, photographic, electronic, digital, analog, or otherwise)." This information was and is not known or readily ascertainable to the public.

62.     Merkabah Labs was prohibited from using any of the Protected Information "for [Merkabah Labs'] private benefit."

63.     Merkabah Labs agreed to the confidentiality obligations to safeguard Lifted Liquids' Protected Information against competitors and others who would misuse any of the Protected Information for personal gain to the detriment of Lifted Liquids.

**E.     Defendants' Unlawful Scheme to Procure, Misappropriate, Transfer and Use Lifted Liquids' Protected Information**

64.     By virtue of his position with Lifted Liquids, Taylor was granted access to Lifted Liquids' Protected Information. Taylor was never authorized to remove the Protected Information or to use or disclose it outside Lifted Liquids.

65.     In late 2019, Taylor gave notice that he was planning to voluntarily leave Lifted Liquids to join Merkabah Labs and/or Merkabah Technologies. Before giving notice, Taylor was carrying out a plan to steal Lifted Liquids' Protected Information and exploit this information for personal gain and for use in his future employment with Merkabah Labs and/or Merkabah Technologies.

66.     Taylor has taken Lifted Liquids' Protected Information and intends to use the misappropriated information to compete against Lifted Liquids.

67.     Taylor's efforts to steal the Protected Information from Lifted Liquids were encouraged, aided and abetted by Puddy, Merkabah Labs, and Merkabah Technologies (Puddy, Merkabah Labs, and Merkabah Technologies are collectively referred to as the "Merkabah Defendants").

68.     While Taylor was a sales representative for Lifted Liquids, the Merkabah Defendants solicited, lured, and induced Taylor to breach his duty to maintain the secrecy of the Protected Information without Lifted Liquids' knowledge or consent.

69.     The Merkabah Defendants would not have enjoyed access to or come into possession of Lifted Liquids' Protected Information and trade secrets without Taylor.

70.     Upon information and belief, Taylor surreptitiously began plotting with the Merkabah Defendants to memorialize, or unlawfully acquire, disclose and use Lifted Liquids' Protected Information for their personal financial or corporate benefit without Lifted Liquids' knowledge or consent.

71.     Taylor and the Merkabah Defendants secretly agreed that Taylor would steal Lifted Liquids' Protected Information, without Lifted Liquids' knowledge or consent, and provide the Protected Information to the Merkabah Defendants.

72.     Taylor, acting in concert with the Merkabah Defendants, intended to use the Protected Information that Taylor stole from Lifted Liquids to form a competing business using Lifted Liquids' trade secrets.

73.     Taylor, while working for Lifted Liquids, transmitted voluminous amounts of Protected Information from his Lifted Liquids' email account (ralphtaylor@liftedliquids.com) to his personal Gmail account (ralpht0727@gmail.com) without Lifted Liquids' knowledge or

consent.

74. Taylor, while working for Lifted Liquids and acting in concert with the Merkabah Defendants, obtained the misappropriated Protected Information and emailed them to Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, at his Merkabah Labs' email account (ryan.puddy@merkabahlabs.com) and at his Merkabah Technologies' email account (ryan@merkabahtechnologies.com) without Lifted Liquids' knowledge or consent.

75. Taylor forwarded internal email communications from his account at ralphtaylor@liftedliquids.com or ralpht0727@gmail.com to ryan.puddy@merkabahlabs.com and ryan@merkabahtechnologies.com that contained Protected Information including among other things:

    a.      customer identities and contact information for both actual and prospective customers;

    b.      private labels for customers (that also identified the customer name and contact information);

    c.      customer invoices (that also identified the customer name and contact information);

    d.      research and development testing results, including analytical data, temperature storage and testing, COAs, and product studies and data (that also identified confidential contact information);

    e.      Lifted Liquids' pricing lists for customers (that also identified the customer name and contact information);

    f.      Lifted Liquids' financial information, including wire instructions that identified Lifted Liquids' account number, routing number, bank information, and company information;

    g.      financial information for Lifted Liquids' customers, including wire instructions;

    h.      purchase orders (that also identified the customer name and contact information);

    i.      shipping and delivery methods (that also identified the customer name and contact information);

    j.      physical inventory for customers (that also identified the customer name and contact information);

    k.      Lifted Liquids' inventory for customers (that also identified the customer name and contact information);

    l.      Lifted Liquids' prospective CBD client list (that also identified the customer name

and contact information);

m.    Lifted Liquids' term sheet;

n.    Lifted Liquids' Private Label CBD catalogue and brochure;

o.    customer handling requirements and specifications (that also identified the customer name and contact information);

p.    Lifted Liquids' compliance letters; and

q.    Lifted Liquids' contracts and agreements, including executed or templates of vendor agreements and purchase order agreements (that also identified the customer name and contact information).

76.    Taylor was not authorized to take the misappropriated Protected Information and there was no legitimate business purpose for the Protected Information to be emailed to Taylor's personal Gmail account or to the Merkabah Defendants.

77.    At no time was Taylor authorized to transmit the Protected Information to his personal email account or disclose the Protected Information to the Merkabah Defendants.

78.    Taylor unlawfully transferred Protected Information to the Merkabah Defendants without conferring any benefit to Lifted Liquids, or Lifted Liquids receiving any benefit.

79.    The Protected Information Taylor unlawfully transferred to the Merkabah Defendants is not known to the public and is of high value to Lifted Liquids and its competitors if known to them.

80.    Lifted Liquids' Protected Information includes virtually every piece of knowledge that competitors, like the Merkabah Defendants, would want to know about Lifted Liquids' business operations, proprietary information, supply chains, and trade secrets.

81.    Taylor had a duty arising under the Colorado Uniform Trade Secrets Act and Defend Trade Secrets Act, independent from his duties under the NDA, to preserve and maintain the secrecy of the Protected Information.

82.    Taylor also had a common law duty not to use or disclose Lifted Liquids' Protected

Information and a duty of loyalty to Lifted Liquids.

83.     Despite Taylor's fiduciary duties and his confidentiality obligations to Lifted Liquids, Taylor transmitted voluminous amounts of Protected Information to the Merkabah Defendants without Lifted Liquids' knowledge or consent.

84.     The Merkabah Defendants knew that Taylor was a Lifted Liquids sales representative when they accepted and received Lifted Liquids' Protected Information from Taylor.

85.     The Merkabah Defendants unlawfully acquired and accepted Lifted Liquids' Protected Information from Taylor.

86.     Taylor's misappropriation of Lifted Liquids' Protected Information was part of a persistent, well-orchestrated campaign of unfair competition by Defendants. Defendants, through their systematic, concerted, and unlawful efforts, were and are attempting to move business away from Lifted Liquids for their financial and corporate benefit.

87.     In furtherance of their scheme, Taylor conspired with the Merkabah Defendants to misappropriate Lifted Liquids' Protected Information, target Lifted Liquids' customers, and create a competing company of Lifted Liquids in furtherance of their personal or corporate interests, while Taylor was still working for Lifted Liquids.

88.     Upon information and belief, the Merkabah Defendants also solicited and induced Taylor to join Merkabah Labs and/or Merkabah Technologies without Lifted Liquids' knowledge or consent.

89.     This exchange of information, as well as the formation of Merkabah Technologies on November 14, 2019, reveals a scheme to compete with Lifted Liquids while Taylor was still

working for Lifted Liquids.

90.     Taylor, while working for Lifted Liquids, invested, deposited, mailed, or transferred by wire or electronic means, hundreds of thousands of dollars to one or more of the Merkabah Defendants in Colorado. Upon information and belief, Taylor is currently employed with Merkabah Labs and/or Merkabah Technologies, and is a co-owner, co-member, co-manager, partner, principal, officer, director, or employee.

91.     Defendants, acting in concert, were essentially picking apart Lifted Liquids' business from within to, among other things, intentionally lure, poach and interfere with Lifted Liquids' actual or prospective customers and its business opportunities and form a new company in direct competition with Lifted Liquids.

92.     Defendants' colluded misappropriation bear the hallmark of a carefully orchestrated plan to abscond with Lifted Liquids' Protected Information while Taylor and Merkabah Labs were acting under the false guise of fulfilling their respective confidentiality duties.

93.     This coordinated assault by Defendants on Lifted Liquids' business is ongoing and constitutes unlawful interference of one or more of Lifted Liquids' existing and prospective business relations and contracts.

94.     Defendants' unlawful and ongoing use and reckless disclosure of the Protected Information, whether in tangible or physical form, or based on their memories, is willful and wanton and has caused Lifted Liquids to incur damages.

95.     By engaging in these egregious actions, Defendants should now be held accountable for their malicious and fraudulent conduct and the substantial harm inflicted on Lifted

Liquids.

96.     Lifted Liquids is entitled to injunctive relief, its actual losses and damages, punitive damages and attorneys' fees, and such other damages as permitted by 18 U.S.C. § 1836(b)(3), C.R.S. §§ 7-74-102 through 7-74-105, C.R.S. § 13-21-102, and other applicable laws.

**First Cause of Action**
**Breach of Contract – Taylor**

97.     Lifted Liquids incorporates the allegations contained in this Complaint.

98.     Lifted Liquids and Taylor entered into the NDA.

99.     The NDA is a valid and enforceable contract supported by adequate consideration.

100.    The NDA contains an implied covenant of good faith and fair dealing.

101.    Lifted Liquids has met all conditions precedent, if any, to its enforcement.

102.    By his signature and pursuant to the terms of the NDA, Taylor unequivocally manifested his intent to be bound by the NDA he signed.

103.    Under the NDA, Taylor agreed not to access, copy, use, or disclose any of Lifted Liquids' Protected Information without authorization from Lifted Liquids.

104.    Taylor had specific, continuing contractual duties to protect and hold the Protected Information in strictest confidence for Lifted Liquids' sole benefit.

105.    Taylor breached the NDA by transmitting voluminous amounts of Protected Information to himself at his personal Gmail account and to two different email accounts held by Puddy, one to Puddy as Merkabah Labs' Chief Executive Officer/Chairman and the other to Puddy as Merkabah Technologies' Chief Executive Officer/Managing Partner, by accessing and using his Lifted Liquids' email account (ralphtaylor@liftedliquids.com) without Lifted Liquids' knowledge or consent.

106.     Taylor did not act in good faith in his dealings with Lifted Liquids. Without good faith and through conscious and deliberate acts, Taylor further breached his duty to deal fairly and in good faith with Lifted Liquids by disclosing Protected Information to the Merkabah Defendants and allowing the Merkabah Defendants to use and exploit Lifted Liquids' Protected Information.

107.     Taylor's breaches of the NDA have caused significant monetary and competitive harm to Lifted Liquids.

108.     Taylor's breach directly and proximately caused Lifted Liquids damages, and Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

### Second Cause of Action
### Willful and Wanton Breach of Contract – Taylor

109.     Lifted Liquids incorporates the allegations contained in this Complaint.

110.     Lifted Liquids and Taylor entered into the NDA.

111.     The NDA is a valid and enforceable contract supported by adequate consideration.

112.     The NDA contains an implied covenant of good faith and fair dealing that upholds Lifted Liquids' reasonable expectations of Taylor's performance under the NDA.

113.     Lifted Liquids has met all conditions precedent, if any, to its enforcement.

114.     By his signature and pursuant to the terms of the NDA, Taylor unequivocally manifested his intent to be bound by the NDA he signed.

115.     Under the NDA, Taylor agreed not to access, copy, use, or disclose any of Lifted Liquids' Protected Information without authorization from Lifted Liquids.

116.     Taylor had specific, continuing contractual duties to protect and hold the Protected Information in strictest confidence for Lifted Liquids' sole benefit.

117.    Taylor induced Lifted Liquids to provide access to Lifted Liquids' Protected Information with representations that he would use appropriate discretion to fulfill his obligations under the NDA and that he would maintain and safeguard Lifted Liquids' trade secrets.

118.    Lifted Liquids reasonably and justifiably relied on Taylor's commitment to the NDA, evidenced by his signature, ultimately to Lifted Liquids' detriment.

119.    Taylor had a duty to fulfill his obligations under the NDA, including the implied covenant of good faith and fair dealing, in a safe and reasonable manner, consistent with accepted industry standards and common sense.

120.    In breach of the NDA, Taylor transmitted voluminous amounts of Protected Information to himself and to the Merkabah Defendants through Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, by accessing and using his Lifted Liquids' email account (ralphtaylor@liftedliquids.com) without Lifted Liquids' knowledge or consent and without any bona fide business purpose or legitimate business interest.

121.    Through conscious and deliberate acts, Taylor maliciously transmitted and exploited Lifted Liquids' extremely sensitive Protected Information that contained Lifted Liquids' most secret and private information. This information includes without limitation Lifted Liquids' unredacted financial information, such as its full bank account and routing number, customer lists that identify the customer's name, contact information and other confidential information, Lifted Liquids' prospective customer lists, its research and development efforts and results, among other Protected Information. This egregious conduct goes beyond mere unreasonableness; such conduct is tainted with fraud, malice, and willful and wanton disregard of Lifted Liquids' rights.

122.     Taylor further evidenced his willful and wanton attitude toward Lifted Liquids and his intentional lack of concern for the rights of Lifted Liquids, his intent not to comply with the terms of the NDA, soliciting and contracting customers, usurping business opportunities, interfering with contracts, and forming a competing company while acting as Lifted Liquids' sales representative.

123.     Taylor's deliberate disregard of his contractual duty was purposefully committed, done heedlessly and recklessly, and demonstrates a willful and wanton disregard of the consequences to, or the rights and safety of, Lifted Liquids. Through such conscious and deliberate acts, Taylor knew that exploiting Lifted Liquids' Protected Information without any legal justification or excuse could cause injury and damage to Lifted Liquids.

124.     Taylor's willful breaches of the NDA deprived Lifted Liquids with the benefit of its bargain, frustrated Lifted Liquids' reasonable expectations, and has caused significant monetary and competitive harm to Lifted Liquids.

125.     Taylor's willful and wanton breach directly and proximately caused Lifted Liquids damages, and Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

**Third Cause of Action
Breach of Contract – Merkabah Labs**

126.     Lifted Liquids incorporates the allegations contained in this Complaint.

127.     Lifted Liquids and Merkabah Labs entered into a contract where Merkabah Labs agreed to process and produce the Merkabah Product, and in exchange, Lifted Liquids would be Merkabah Labs' exclusive distributor for the Merkabah Product.

128.     Merkabah Labs further agreed that Merkabah Labs would "Private Label/White

Label" all nano products and other CBD products Lifted Liquids creates.

129.    The contract is valid and enforceable and supported by adequate consideration.

130.    The contract contains an implied covenant of good faith and fair dealing.

131.    Lifted Liquids has met all conditions precedent, if any, to its enforcement.

132.    Lifted Liquids performed all of its obligations and conditions under the contract.

133.    Merkabah Labs also agreed to substantial confidentiality provisions.

134.    Merkabah Labs' confidentiality obligations prohibited disclosure and use of Lifted Liquids' Protected Information.

135.    Merkabah Labs was also prohibited from using any of the Protected Information "for [Merkabah Labs'] private benefit."

136.    Merkabah Labs induced Lifted Liquids to enter into the contract with representations that it would use appropriate discretion to fulfill its obligations under the contract and that it would maintain and safeguard Lifted Liquids' Protected Information and trade secrets.

137.    Lifted Liquids' reasonably and justifiably relied on Merkabah Labs' commitment to the contract, evidenced by Puddy's signature as Merkabah Labs' "duly authorized officer," ultimately to Lifted Liquids' detriment.

138.    Merkabah Labs had a duty to fulfill its obligations under the contract, including the implied covenant of good faith and fair dealing.

139.    Merkabah Labs, through Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, received from Taylor numerous Lifted Liquids' internal email communications containing Protected Information. The Protected Information that Puddy and Merkabah Labs received from

Taylor had no legitimate business purpose or interest, or relation to Merkabah Labs' contract with Lifted Liquids.

140.    Merkabah Labs breached the contract with Lifted Liquids by allowing Taylor to unlawfully transmit voluminous amounts of Lifted Liquids Protected Information to Puddy, and misappropriating the Protected Information to its benefit.

141.    Lifted Liquids' Protected Information was not required or necessary to fulfill its obligations under the contract.

142.    Merkabah Labs further breached its obligation to deal fairly and in good faith with Lifted Liquids by exploiting and using Lifted Liquids' Protected Information without Lifted Liquids' knowledge or consent.

143.    Merkabah Labs' breach of its contractual obligations and confidentiality duties to Lifted Liquids has caused significant monetary and competitive harm to Lifted Liquids.

144.    Merkabah Labs' breach directly and proximately caused Lifted Liquids damages, and Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

### Fourth Cause of Action
### Willful and Wanton Breach of Contract – Merkabah Labs

145.    Lifted Liquids incorporates the allegations contained in this Complaint.

146.    Lifted Liquids and Merkabah Labs entered into a contract where Merkabah Labs agreed to process and produce the Merkabah Product, and in exchange, Lifted Liquids would be Merkabah Labs' exclusive distributor for the Merkabah Product.

147.    Merkabah Labs further agreed that Merkabah Labs would "Private Label/White Label" all nano products and other CBD products Lifted Liquids creates.

148.     The contract is valid and enforceable and supported by adequate consideration.

149.     Lifted Liquids has met all conditions precedent, if any, to its enforcement.

150.     Lifted Liquids performed all of its obligations and conditions under the contract.

151.     The contract contains an implied covenant of good faith and fair dealing that upholds Lifted Liquids' reasonable expectations of Merkabah Labs' performance under the contract.

152.     Merkabah Labs agreed to substantial confidentiality provisions.

153.     Merkabah Labs' confidentiality obligations prohibited disclosure and use of Lifted Liquids' Protected Information.

154.     Merkabah Labs was also prohibited from using any of the Protected Information "for [Merkabah Labs'] private benefit."

155.     Through conscious and deliberate acts, Merkabah Labs, through Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, received from Taylor numerous Lifted Liquids' internal email communications that contained Protected Information and had no legitimate business purpose or interest or relation to Merkabah Labs' contract with Lifted Liquids.

156.     Merkabah Labs accepted Lifted Liquids' extremely sensitive Protected Information and trade secrets that contained Lifted Liquids' most secret and private information. This information includes without limitation Lifted Liquids' unredacted financial information, such as its full bank account and routing number, customer lists that identify the customer's name, contact information and other confidential information, Lifted Liquids' prospective customer lists, its research and development efforts and results, among other Protected Information. This egregious

conduct goes beyond mere unreasonableness; such conduct is tainted with fraud, malice, and willful and wanton disregard of Lifted Liquids' rights.

157.    Merkabah Labs also maliciously exploited and used Lifted Liquids' Protected Information to gain information about Lifted Liquids' supply chain and its actual and prospective customers, to poach, solicit, lure, and interfere with Lifted Liquids' existing or prospective customers and business opportunities, and to compete with Lifted Liquids or start a competing business for its own private, economic benefit.

158.    Merkabah Labs further evidenced its willful and wanton attitude toward Lifted Liquids and its intentional lack of concern for the rights of Lifted Liquids by soliciting and contacting customers, usurping business opportunities, interfering with contracts, and forming a competing company.

159.    Merkabah Labs' deliberate disregard of its contractual duty was purposefully committed, done heedlessly and recklessly, and demonstrates a willful and wanton disregard of the consequences or the rights of Lifted Liquids. Through such conscious and deliberate acts, Merkabah Labs knew that exploiting Lifted Liquids' Protected Information without any legal justification or excuse could cause injury and damage to Lifted Liquids.

160.    As a result of Merkabah Labs' failure to comply with and perform its obligations under the contract, including the implied covenant of good faith and fair dealing, Merkabah Labs' willful breaches of the contract deprived Lifted Liquids with the benefit of its bargain, frustrated Lifted Liquids' reasonable expectations, and has caused significant monetary and competitive harm to Lifted Liquids.

161.    Merkabah Labs' willful and wanton breach of the contract directly and proximately

caused Lifted Liquids damages, and Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

**Fifth Cause of Action**
**Violation of the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq*. – All Defendants**

162.    Lifted Liquids incorporates the allegations contained in this Complaint.

163.    Taylor was provided with Lifted Liquids' Protected Information pursuant to his relationship and NDA with Lifted Liquids.

164.    Taylor and Merkabah Labs had a contractual duty to preserve and maintain the confidentiality of Lifted Liquids' Protected Information.

165.    In addition, Defendants had an independent duty to preserve and maintain the confidentiality of Lifted Liquids' Protected Information under the Colorado Uniform Trade Secrets Act.

166.    Lifted Liquids' Protected Information constitutes protected trade secret information as defined by the Colorado Uniform Trade Secrets Act.

167.    Lifted Liquids' Protected Information has independent economic value and commercial value because it is not generally known or readily ascertainable by individuals outside of Lifted Liquids.

168.    In breach of their duties, Defendants unlawfully acquired, disclosed, used, or otherwise misappropriated Lifted Liquids' trade secrets and other Protected Information.

169.    Taylor transmitted voluminous amounts of Protected Information to Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, and exploited Lifted Liquids' Protected Information, for his or their

mutual benefit.

170.    By using his Lifted Liquids' email account, Taylor improperly transferred Lifted Liquids' Protected Information to his personal Gmail account and to the Merkabah Defendants.

171.    Taylor knew or had reason to know that he acquired and disclosed Lifted Liquids' Protected Information and trade secrets by improper means and without Lifted Liquids' express or implied consent.

172.    At the time the Merkabah Defendants received and accepted Lifted Liquids' Protected Information and trade secrets from Taylor, Taylor was working as Lifted Liquids' sales representative. The Merkabah Defendants knew or had reason to know that Taylor's disclosure of Lifted Liquids' Protected Information and trade secrets was derived from Taylor's improper acquisition and transmission of Lifted Liquids' internal emails.

173.    Defendants knowingly and unlawfully acquired the Protected Information to gain an unfair advantage over Lifted Liquids without expending any money or resources of their own.

174.    Defendants used the Protected Information to poach, solicit, lure, and interfere with Lifted Liquids' actual and prospective customers and business opportunities, and form a competing business or product.

175.    Defendants' willful and malicious misappropriation of Lifted Liquids' Protected Information continues to this day.

176.    Defendants' prior and ongoing misappropriation of Lifted Liquids' trade secrets violates the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq*., and Colorado common law principles against misappropriation of trade secrets.

177.    Defendants' prior misappropriation, use, and disclosure of Lifted Liquids'

Protected Information and formation of a competing business raises the inference that they will continue to use and disclose Lifted Liquids' trade secrets to Lifted Liquids' detriment.

178.    Such disclosure and use of Lifted Liquids' Protected Information is without Lifted Liquids' implied or express knowledge or consent.

179.    As a direct and proximate result of Defendants' actual and inevitable misappropriation, disclosure, and use of Lifted Liquids' trade secrets and other Protected Information, Lifted Liquids has suffered and will continue to suffer immediate injury, harm, and damage.

180.    Defendants are jointly responsible for Lifted Liquids' damages.

181.    As a result of Defendants' conduct, current and threatened, Lifted Liquids has incurred damages including without limitation diminution of its competitive positions in the marketplace, loss of its ability to supply unique products, and lost opportunities to capitalize on its status in the marketplace. Such activities also directly and proximately caused additional significant economic damages to Lifted Liquids in an amount to be proven at trial.

182.    Defendants' misappropriation of Lifted Liquids' trade secrets has damaged and will continue to damage Lifted Liquids, entitling Lifted Liquids to an award of actual and compensatory damages, as well as damages for unjust enrichment, in an amount to be determined at trial.

183.    Defendants' misappropriation of Lifted Liquids' trade secrets is attended by circumstances of fraud, malice, or willful and wanton disregard of Lifted Liquids' rights, thereby entitling Lifted Liquids to an award of exemplary damages as provided for under the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-104, and all other recoverable costs and fees, including attorneys' fees.

**Sixth Cause of Action**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.* – All Defendants**

184.    Lifted Liquids incorporates the allegations contained in this Complaint.

185.    Taylor enjoyed access to Lifted Liquids' Protected Information pursuant to his relationship and NDA with Lifted Liquids. Taylor knew or had reason to know that he acquired knowledge of Lifted Liquids' trade secrets under circumstances giving rise to a duty to maintain the secrecy of such trade secrets. Taylor stood in a position of trust to Lifted Liquids and had contractual and legal duties to refrain from disclosing or using for his benefit, or that of a third party, Lifted Liquids' Protected Information or trade secrets.

186.    The Merkabah Defendants did not have access to Lifted Liquids' Protected Information; they unlawfully received Lifted Liquids' Protected Information from Taylor, while he was Lifted Liquids' sales representative. As such, The Merkabah Defendants knew or had reason to know that their acquisition, disclosure, and use of Lifted Liquids' Protected Information and trade secrets occurred under circumstances giving rise to a duty to maintain the secrecy of such trade secrets and prevent unlawful use for their benefit.

187.    Lifted Liquids' Protected Information constitutes protected trade secret information, as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1839, related to products and services used in or intended for use in interstate or foreign commerce.

188.    Lifted Liquids' Protected Information has independent economic value and commercial value because it is not generally known or readily ascertainable by individuals outside of Lifted Liquids.

189.    Defendants, with clear intent to convert or misappropriate Lifted Liquids' Protected Information to their economic benefit, intending or knowing that the offense could injure Lifted

Liquids engaged in the following conduct: (a) stole, or without authorization removed, or by fraud or deception obtained such Protected Information; and (b) without authorization copied, duplicated, downloaded, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed such Protected Information.

190.    Defendants received or possessed Lifted Liquids' Protected Information knowing, or having reason to know, that such Protected Information they received or possessed was stolen, appropriated, obtained, or converted without Lifted Liquids' knowledge or consent.

191.    Taylor transmitted voluminous amounts of Protected Information to Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, and misappropriated Lifted Liquids' Protected Information, for his or their mutual, economic benefit.

192.    By using his Lifted Liquids' email account, Taylor improperly transferred Lifted Liquids' Protected Information to his personal Gmail account and to the Merkabah Defendants.

193.    Defendants knowingly and unlawfully misappropriated Lifted Liquids' Protected Information to gain an unfair advantage over Lifted Liquids without expending any money or resources of their own.

194.    Defendants' improper acquisition and unauthorized use or disclosure of Lifted Liquids' Protected Information violates the Defend Trade Secrets Acts, 18 U.S.C. § 1832 *et seq.*, and was willful and malicious.

195.    As a direct and proximate result of Defendants' actual, inevitable, and threatened misappropriation, disclosure, and use of Lifted Liquids' trade secrets and other Protected Information, Lifted Liquids has suffered and will continue to suffer immediate injury, harm, and

damage.

196.     Defendants are jointly and severally liable for Lifted Liquids' damages.

197.     Lifted Liquids is entitled to preliminary and permanent injunctive relief against further misappropriation of Lifted Liquids' Protected Information and trade secrets.

198.     Lifted Liquids is entitled to actual and compensatory damages, as well as damages for unjust enrichment, in an amount to be proven at trial.

199.     Lifted Liquids' trade secrets were willfully and maliciously misappropriated, thereby entitling Lifted Liquids to an award of exemplary damages as provided for under the Defend Trade Secrets Acts, 18 U.S.C. § 1836, and other recoverable costs and fees, including attorneys' fees.

**Seventh Cause of Action**
**Breach of Fiduciary Duty – Taylor**

200.     Lifted Liquids incorporates the allegations contained in this Complaint.

201.     Taylor expressly or implicitly undertook fiduciary and contractual duties to Lifted Liquids, including without limitation duties of care, loyalty, good faith, disclosure, and confidentiality.

202.     Taylor owed Lifted Liquids a duty to maintain the confidentiality of Lifted Liquids' Protected Information.

203.     Taylor also owed Lifted Liquids a common law duty of loyalty.

204.     Taylor owed a duty to act in Lifted Liquids' best interests and to not compete with or steer business opportunities from Lifted Liquids to its competitors while still working for Lifted Liquids.

205.     Lifted  Liquids  entrusted  Taylor  with  access  to  Lifted  Liquids'  Protected

Information so that he could conduct his duties and responsibilities for and on behalf of Lifted Liquids.

206.    Taylor improperly acquired, disclosed, used, or otherwise misappropriated Lifted Liquids' Protected Information to obtain information about Lifted Liquids' supply chain and actual and prospective customers, to poach, lure, solicit, and interfere with Lifted Liquids' actual and prospective customers and business opportunities, to form a competing business or product, and join Merkabah Labs and/or Merkabah Technologies.

207.    Taylor has contacted one or more of Lifted Liquids' customers in an attempt to solicit business for his own benefit without Lifted Liquids' knowledge or consent.

208.    By transmitting voluminous amounts of Protected Information to the Merkabah Defendants, Taylor engaged in self-dealing, misappropriated and exploited Lifted Liquids' Protected Information, and breached his duty of loyalty to Lifted Liquids.

209.    Lifted Liquids has been damaged by Taylor's disloyal and fraudulent activities and is entitled to injunctive relief against Taylor.

210.    Lifted Liquids is also entitled to any and all forms of compensation paid to Taylor subsequent to the breach of his fiduciary duties to Lifted Liquids, including disgorgement of the compensation Lifted Liquids paid to Taylor during the period of his disloyalty, including attorneys' fees, and costs recoverable under applicable laws, in an amount to be determined at trial.

**Eighth Cause of Action**
**Tortious Interference with Prospective and Existing Business Relations – All Defendants**

211.    Lifted Liquids incorporates the allegations contained in this Complaint.

212.    Lifted Liquids has business relationships with many customers with an expectation of actual or probable future economic benefit.

213.     Defendants obtained Lifted Liquids' Protected Information through unlawful means allowing them to know about the existence of Lifted Liquids' business relationships.

214.     Lifted Liquids' Protected Information includes but is not limited to customer lists and information containing their contact information, financial information, pricing lists, preferences and demands, delivery instructions, and purchasing history and orders.

215.     Defendants intentionally engaged in wrongful acts and conduct designed to interfere with and disrupt the relationships between Lifted Liquids and its actual or prospective customers.

216.     Taylor knew of Lifted Liquids' business and customer relationships by virtue of his position and duties with Lifted Liquids. Taylor unlawfully transmitted this information to the Merkabah Defendants.

217.     Upon information and belief, the Merkabah Defendants unlawfully solicited, encouraged, engaged, lured, or induced Taylor to unlawfully acquire Lifted Liquids' Protected Information containing actual and potential customer lists and information with the intent of exploiting such information for their own private benefit.

218.     Defendants exploited and used, without Lifted Liquids' knowledge or consent, Lifted Liquids' Protected Information to gain information about Lifted Liquids' actual and prospective customers and business relationships, and to poach, solicit, steal and interfere with Lifted Liquids' business relationships and business opportunities.

219.     Defendants, acting in concert, and while Taylor was working for Lifted Liquids, contacted one or more of Lifted Liquids' existing or prospective customers and solicited business from Lifted Liquids' existing or prospective customers in order to compete and obtain a

competitive advantage over Lifted Liquids.

220.    Defendants intentionally interfered with Lifted Liquids' actual and prospective business relationships and opportunities without Lifted Liquids' knowledge and consent and with malicious and reckless disregard of Lifted Liquids' rights.

221.    Lifted Liquids has been damaged by Defendants' actions and is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

**Ninth Cause of Action**
**Tortious Interference with Contract – Puddy, Merkabah Labs, and Merkabah Technologies**

222.    Lifted Liquids incorporates the allegations contained in this Complaint.

223.    While Taylor was working for Lifted Liquids, Defendants hatched a scheme to steal, exploit, or otherwise misappropriate Lifted Liquids' Protected Information for their benefit and to the detriment of Lifted Liquid.

224.    Upon information and belief, the Merkabah Defendants solicited, encouraged, and induced Taylor to breach his duty to maintain the confidentiality of Lifted Liquids' Protected Information and recruited Taylor to join Merkabah Labs and/or Merkabah Technologies while Taylor was still working for Lifted Liquids.

225.    Taylor, under specific contractual duties to maintain Lifted Liquids' Protected Information in strictest confidence, transmitted voluminous amounts of Protected Information to the Merkabah Defendants through Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner using his Lifted Liquids' email account.

226.    At the time the Merkabah Defendants acquired Lifted Liquids' Protected Information from Taylor, the Merkabah Defendants knew or had a reason to know that Taylor's disclosure of Lifted Liquids' Protected Information constituted a breach of his duty to maintain the secrecy of Lifted Liquids' Protected Information and the Merkabah Defendants induced Taylor to breach his NDA to acquire and exploit Lifted Liquids' Protected Information without expending any of their own resources, time, money, and effort.

227.    The Merkabah Defendants unlawfully engaged or induced Taylor to obtain access to Lifted Liquids' Protected Information with the intent of using the information to interfere, solicit, or steal Lifted Liquids' existing and prospective contracts.

228.    The Merkabah Defendants used the information that they acquired and accepted by unlawful means to intentionally interfere and induce one or more of Lifted Liquids' existing customers to breach their contract.

229.    By acquiring and accepting Lifted Liquids' Protected Information through unlawful means, the Merkabah Defendants did interfere and in fact induced a breach of Taylor's NDA with Lifted Liquids.

230.    As a direct and proximate result of the Merkabah Defendants' intentional interference with Lifted Liquids' existing contracts and Taylor's NDA with Lifted Liquids, Lifted Liquids has suffered and will continue to suffer damages.

231.    Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

**Tenth Cause of Action**
**Civil Conspiracy – All Defendants**

232.    Lifted Liquids incorporates the allegations contained in this Complaint.

233.    Defendants knowingly, intentionally, and recklessly conspired to misappropriate Lifted Liquids' Protected Information and competitive advantages.

234.    Defendants designed and executed a plan to surreptitiously obtain Lifted Liquids' Protected Information and use that information to solicit and steal Lifted Liquids' customers and business opportunities without expending any of their own effort, money, and resources.

235.    Defendants consciously conspired and deliberately exploited Lifted Liquids' Protected Information to compete with Lifted Liquids or form a competing business and usurp actual and prospective business opportunities that rightfully belong to Lifted Liquids.

236.    Taylor conspired with the Merkabah Defendants and agreed that Taylor would breach his duties of confidentiality and loyalty by sending Lifted Liquids' Protected Information to the Merkabah Defendants while Taylor was actively working for and being compensated by Lifted Liquids.

237.    Taylor, by transmitting Lifted Liquids' Protected Information to Puddy, Merkabah Labs' Chief Executive Officer/Chairman and Merkabah Technologies' Chief Executive Officer/Managing Partner, and the Merkabah Defendants, by accepting Lifted Liquids' Protected Information from Taylor, had a meeting of the minds in the object or course as evidenced by their attempts to obtain, disclose, and use Lifted Liquids' Protected Information.

238.    Defendants, with clear intent to convert or misappropriate Lifted Liquids' Protected Information for their economic or corporate benefit, and use of Lifted Liquids' Protected Information, knew or should have known that such conduct could cause injury to Lifted Liquids.

239.    Defendants conspired, without Lifted Liquids' knowledge or consent, to obtain Lifted Liquids' Protected Information by stealing, appropriating, taking, carrying away,

concealing, by fraud, artifice, deception, or otherwise, Lifted Liquids' Protected Information.

240.   Defendants conspired, without Lifted Liquids' knowledge or consent, to copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, replicate, transmit, deliver, send, mail, communicate, or convey Lifted Liquids' Protected Information.

241.   Defendants conspired to receive and possess Lifted Liquids' Protected Information through unlawful means knowing that such Protected Information they received or possessed was stolen, appropriated, obtained, or converted without Lifted Liquids' knowledge or consent.

242.   Defendants committed one or more unlawful overt acts during the commission of the conspiracy, including but not limited to, misappropriation of Lifted Liquids' Protected Information and trade secrets, breach of fiduciary duties, and intentionally interfering with Lifted Liquids' customers and business relations, among others, in willful and reckless disregard of Lifted Liquids' rights.

243.   As a direct and proximate result of Defendants' unlawful and overt actions in furtherance of their conspiracy, Lifted Liquids' has suffered and will continue to suffer harm and damages.

244.   Lifted Liquids is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

### Eleventh Cause of Action
### Unfair Competition – All Defendants

245.   Lifted Liquids incorporates the allegations contained in this Complaint.

246.   The Merkabah Defendants obtained Lifted Liquids' Protected Information and trade secrets through the improper acts of Taylor, Lifted Liquids' former sales representative.

247.   Merkabah Labs and Merkabah Technologies are direct competitors of Lifted

Liquids.

248.    For their own benefit, Defendants engaged in unfair competition against Lifted Liquids by improperly obtaining, using, and disclosing Lifted Liquids' Protected Information to solicit and interfere with Lifted Liquids' current and prospective customers and business relationships and to unfairly, wrongfully, and unlawfully compete with Lifted Liquids.

249.    Defendants used Lifted Liquids' Protected Information to further its own interests and gain an unfair competitive advantage over Lifted Liquids and form a competing business, to the detriment of Lifted Liquids.

250.    Defendants' colluded misappropriation and misuse of Lifted Liquids' trade secrets and other Protected Information constitutes unfair competition.

251.    By intentionally interfering with the NDA and the contract, and Taylor's breach of fiduciary duties to Lifted Liquids, Defendants have unfairly received the benefit of their wrongful exploitation, constituting unfair competition.

252.    As a direct and proximate result of Defendants' unfair competition, Lifted Liquids has suffered, and will continue to suffer, damages.

253.    Defendants have, or will be, unjustly enriched for which Lifted Liquids seeks disgorgement of any and all profits earned by Defendants through their unfair competition, as well as attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

**Twelfth Cause of Action**
**Unjust Enrichment – All Defendants**

254.    Lifted Liquids incorporates the allegations contained in this Complaint.

255.    Defendants received the benefits of acquiring and possessing Lifted Liquids'

Protected Information and trade secrets that rightfully belong to Lifted Liquids.

256.    Defendants unlawfully retained, used, and otherwise misappropriated Lifted Liquids' Protected Information and trade secrets without expending any of their own resources.

257.    The benefit of having Lifted Liquids' Protected Information were accepted and retained by Defendants under circumstances which would make it unjust for such information to be retained without payment of its value.

258.    By reason of Defendants' concerted conduct, Defendants have been unjustly enriched at Lifted Liquids' expense.

259.    As a direct and proximate consequence of Defendants' conduct, Lifted Liquids has suffered damages and is entitled to damages, including attorneys' fees and costs recoverable under applicable laws, in an amount to be determined at trial.

### Thirteenth Cause of Action
### Injunctive Relief – All Defendants

260.    Lifted Liquids incorporates the allegations contained in this Complaint.

261.    Because Lifted Liquids' remedy at law is inadequate, Lifted Liquids also seeks preliminary and permanent injunctive relief.

262.    Lifted Liquids is threatened with use and disclosure of its Protected Information and trade secrets that will cause it irreparable harm. Thus, the Defendants must be restrained from the use and disclosure of Lifted Liquids' Protected Information and trade secrets, and must be compelled to return to Lifted Liquids and cease use of Lifted Liquids' Protected Information.

### Conditions Precedent

263.    All conditions precedent to Lifted Liquids' causes of actions and requests for relief asserted in this Complaint have been performed or have occurred or are legally excused.

**Notice of Intent to Seek Exemplary Damages**

264.     The damages sustained by Lifted Liquids were caused by the Defendants under circumstances of fraud and willful and wanton conduct. At such time as appropriate discovery is obtained, Lifted Liquids will seek permission from this Court to amend this Complaint to request an Order of the Court allowing Lifted Liquids to include a claim for all exemplary damages as provided for under C.R.S. § 13-21-102 and all other applicable laws.

**Leave to Amend**

265.     Lifted Liquids respectfully requests leave to amend this Complaint to add or delete any claims, relief requested (including any right to exemplary damages) or parties after discovery reveals facts regarding the same, after the exchange of initial F.R.C.P. 26 disclosures and upon sufficient proof.

**Prayer for Relief**

WHEREFORE, Plaintiff Lifted Liquids respectfully requests the following relief:

1.     Judgment be entered jointly against all Defendants on all claims for relief and in favor of Lifted Liquids;

2.     Actual and compensatory damages as proven;

3.     Injunctive relief enjoining all Defendants from disclosing and using any Protected Information belonging to Lifted Liquids and to prevent the Defendants from using Lifted Liquids' trade secrets and Protected Information in any way;

4.     Damages for unjust enrichment, including without limitation restitution or disgorgement of all profits made by Defendants, in the past and future;

5.     Any and all forms of compensation paid to Defendant Ralph L. Taylor III after and

during the periods which he breached his fiduciary duties to Lifted Liquids;

6.     Punitive and exemplary damages recoverable under applicable law, including without limitation the Defend Trade Secrets Acts, 18 U.S.C. § 1836, and the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-104;

7.     Attorneys' fees, expert witness fees, and costs of the litigation incurred by Lifted Liquids in an amount to be determined at trial;

8.     Pre- and post-judgment interest; and

9.     For such other and further relief as the Court deems just and proper.

DATED: January 17, 2020

                         Respectfully submitted,

                         By:*/s/ Marc C. Smith*

                             Marc C. Smith
                             Fox Rothschild LLP
                             321 North Clark Street
                             Suite 1600
                             Chicago, IL 60654
                             Telephone: (312) 517-9200
                             Facsimile: (312) 517-9201

                             Marsha M. Piccone
                             Esther H. Lee
                             Fox Rothschild, LLP
                             1225 17th Street
                             Suite 2200
                             Denver, CO 80202
                             Telephone:  (303) 292-1200
                             Facsimile:  (303) 292-1300

<u>Plaintiff's Address:</u>

43360 N US Hwy 41
Unit H
Zion, Illinois 60099